IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RONALD GOODWINE, JR.,                     )
                          Plaintiff,       )
                                           )
        vs.                                )      Civil Action No. 09-1592
                                           )      Magistrate Judge Maureen P. Kelly
MR. STEPHEN KELLER, P.B.P.P.               )
Hearing Examiner, Individual/Official      )
Capacity; BENJAMIN A. MARTINEZ,            )      Re: ECF No. 57
P.B.P.P. Board Member, Ind/Off. Capacity,  )
P.B.P.P. Central Office; CHARLES FOX,      )
P.B.P.P. Board Member, P.B.P.P. Central    )
Office Individual/Official Capacity;       )
JEFFREY R. IMBODEN, P.B.P.P. Board         )
Member, P.B.P.P. Central Office            )
Individual/Official Capacity; VICTORIA     )
S. MADDEN, P.B.P.P. Chief Counsel,         )
P.B.P.P. Central Office, Individual/Official )
Capacity; ARTHUR R. THOMAS,                )
P.B.P.P. ASST. COUNSEL, P.B.P.P.           )
Central Office, Individual/Official         )
Capacity; JUSTIN SCHAUP, Records           )
Supervisor, SCI Pgh, Individual/Official   )
Capacity; CAROL SCIRE, Grievance           )
Coordinator SCI Pgh, Individual Official   )
Capacity; DAWN CHAMBERLAIN,                )
Warden, SCI-Pgh, Individual/Official       )
Capacity; CYNTHIA DAUB; THOMAS             )
CASSIDY (all in ind./official capacities),  )
                          Defendants.       )


**OPINION AND ORDER**

**KELLY, Magistrate Judge**

        Plaintiff Ronald Goodwine, Jr. ("Plaintiff"), filed this civil rights action, naming 11

Defendants, all of whom are current or former employees of the Pennsylvania Board of

Probation and Parole ("PBPP" or the "Board") or the Department of Corrections ("DOC").

Plaintiff's claims arise out of Defendants' alleged violation of his constitutional rights, causing

him to serve 328 days beyond the maximum date of his 1998 judicially imposed sentence. Defendants have filed a Motion to Dismiss Third Amended Complaint [ECF No. 57]. For each of the reasons set forth below, Defendants' Motion is GRANTED.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural History

Plaintiff initiated this action *pro se* while incarcerated in the Allegheny County Jail on December 4, 2009,[1] by filing a Motion for Leave to Proceed *in forma pauperis* [ECF No. 1]. The motion was granted on February 9, 2010 [ECF No. 2], and the Complaint [ECF No. 3] was thereafter docketed on February 11, 2010. Plaintiff subsequently filed an Amended Complaint [ECF No. 29] and Defendants filed a Motion to Dismiss the Amended Complaint [ECF No. 31]. The Motion to Dismiss was granted by Memorandum Opinion and Order [ECF No. 42] entered on March 22, 2011, albeit "with prejudice insofar as he sues the Defendants in their official capacities, but is dismissed without prejudice in all other respects." [ECF No. 42, at 6.]  The Court permitted Plaintiff to file a second amended complaint "plead[ing] facts necessary to state a claim against the Defendants, specifying more clearly what each Defendant allegedly did or failed to do in illegally extending Plaintiff's sentence." Id.

Plaintiff filed an Amended Complaint [ECF No. 44], which Defendants moved to dismiss by motion filed on May 2, 2011 [ECF No. 45].  Thereafter, by Order entered on November 10, 2011, the Court granted the Motion to Dismiss, but – noting that Plaintiff had obtained counsel in the interim – allowed him yet another opportunity to file an amended complaint to cure the

---

[1] We take judicial notice of Plaintiff's Criminal Docket in the Allegheny County Court of Common Pleas.  See, http://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-02-CR-0007530-2009. Plaintiff's incarceration at the time of filing this action was predicated upon an arrest and conviction for certain drug-related charges, resisting arrest, and driving at an unsafe speed, which occurred separately and subsequent to the conviction giving rise to Plaintiff's term of parole at issue.

deficiencies in each of his previously filed pleadings.  [ECF No. 55, Order at 2].  Through

counsel, Plaintiff has filed his Third Amended Complaint [ECF No. 56], which is the subject of

Defendants' Motion to Dismiss Third Amended Complaint [ECF No. 57].

Plaintiff's Third Amended Complaint alleges that Defendants' actions and/or omissions

resulted in unlawfully detaining him past his maximum sentence date.  Defendants move to

dismiss this complaint, asserting the PBPP Defendants' absolute and/or qualified immunity for

their roles in recommitting Plaintiff to jail after violating the terms of his parole.  In addition, the

DOC Defendants raise as a complete defense the absence of their personal involvement in the

alleged violation of Plaintiff's rights. Finally, Defendants raise the inadequacy of Plaintiff's

pleading and failure to allege sufficient facts to create a plausible claim for relief.

Plaintiff, through counsel, has filed an inadequate Response in Opposition to

Defendants' Motion to Dismiss Third Amended Complaint, asserting only  generally that

Plaintiff has pled sufficient facts to survive a Motion to Dismiss.  Plaintiff fails to respond to

Defendants' arguments in favor of dismissal and so has apparently conceded that, as a matter of

law, Defendants are entitled to a finding of absolute or qualified immunity, and that as to certain

other Defendants, the Third Amended Complaint fails to allege sufficient personal involvement

in the alleged violation of Plaintiff's rights to support a cause of action. [ECF No. 60].

Nevertheless, in an abundance of caution and leniency, each of the grounds raised by Defendants

for dismissal of Plaintiff's action is discussed herein.

B.     Factual and Procedural Background

This case arises out of the revocation of Plaintiff's parole.  The facts leading up to the

revocation of parole have been succinctly summarized by the Pennsylvania Commonwealth

Court:

In June 1998, Parolee pled nolo contendere to a robbery charge and was sentenced to five to 10 years of imprisonment plus a consecutive term of five years['] probation. He was granted confinement credit for the time he spent in the Allegheny County Jail and began serving time in state prison. On January 27, 2003, Parolee was released on parole, but was recommitted shortly after as a technical parole violator for violating the conditions of his parole by consuming alcohol. He was then re-paroled in July 2004 and the revocation of that parole is the subject of this appeal.

In November 2006, Parolee was arrested and charged with aggravated assault, simple assault and resisting arrest. He was confined in the Allegheny County Jail, and the Board lodged a detainer against him. Later, the simple assault and resisting arrest charges were withdrawn leaving only the aggravated assault charge. On May 23, 2007, Parolee, through counsel and the district attorney's office, reached an agreement by which the district attorney agreed to withdraw the aggravated assault charge and Parolee would agree to plead guilty to the summary offense of harassment before the Honorable Jeffery Manning of the Court of Common Pleas of Allegheny County, who would sit as a district justice pro hac vice.

The agreement was crafted in this way because "who" convicts a parolee is important. Pennsylvania law distinguishes between convicted parole violators and technical parole violators with regard to credit for time spent at liberty on parole. In order for a parolee to be classified as a convicted parole violator, a parolee must be convicted of a crime in a court of record. However, "convictions of summary criminal offenses before a District Justice do not constitute convictions in a court of record within the meaning of ... [Section 21.1a(a) of the Parole Act] 61 P.S. § 331.21a(a), and the Board is not authorized to recommit a parolee as a convicted parole violator for such convictions." *See Harper v. Pennsylvania Board of Probation and Parole*, 103 Pa.Cmwlth. 251, 520 A.2d 518 (1987), citing *Coleman v. Pennsylvania Board of Probation and Parole*, 101 Pa.Cmwlth. 144, 515 A.2d 1004 (1986).

That same day it was signed, Judge Manning accepted the agreement, and sitting as a district justice, accepted Parolee's guilty plea to harassment and sentenced Parolee to 90 days of probation. The matter was then brought before a Board hearing examiner. Parolee remained confined in the Allegheny County Jail on the Board's detainer.

A parole revocation/violation hearing was held to determine whether Parolee would be recommitted as a convicted or technical parole violator. At the hearing, Parolee argued that he could not be adjudicated a convicted parole violator because a common pleas judge sitting as a district justice accepted his guilty plea and, therefore, his plea was accepted in a non-record court. While admitting that Judge Manning sat as a district justice, his parole agent argued that only the president judge of Allegheny County had the power to designate a common pleas

judge to sit as a district justice, and because Judge Manning was not so designated by his president judge, his declaration that he sat as a district justice was meaningless. Accepting the parole agent's position, the hearing examiner recommitted Parolee as a convicted parole violator for a period of six months.[3]

> [3]If Parolee was deemed a technical parole violator, he would retain his confinement credit and his maximum confinement date would remain January 12, 2008. If he were found to be a convicted parole violator, he would forfeit all confinement credit and his maximum confinement date would extend to January 2, 2010.

Parolee filed a pro se petition for administrative review arguing that under 61 P.S. § 331.21(a), he could not be considered a convicted parole violator because he had not been convicted in a court of record because Judge Manning was sitting as a district justice. The Board affirmed, finding that there was no evidence that Judge Manning had been assigned to be a district justice for Parolee's case by the president judge and that his declaration had no legal effect.

Goodwine v. Pennsylvania Bd. of Prob. & Parole, 960 A.2d 184, 186-87 (Pa. Commw. Ct. 2008)(italics added).

On appeal of the PBPP's decision, the Pennsylvania Commonwealth Court concluded that the Board committed an error of law and reversed, holding that all judges sitting on the Court of Common Pleas are vested with the authority to act as district justices. Id. "To hold otherwise would raise serious constitutional questions of due process and equal protection involving a liberty interest because it would mean that a parolee found guilty of a summary offense by a common pleas judge would lose years of street time while a parolee found guilty by a district justice would not." Id. Accordingly, on October 31, 2008, the Commonwealth Court held that the Board was required to find Plaintiff to be a Technical Parole Violator for Parole 324-AB and ordered the PBPP to credit Plaintiff "such that his originally calculated maximum date of January 12, 2008, shall be his maximum date." The Commonwealth Court, however, did not order Plaintiff's immediate release and within the time to appeal, the PBPP appealed the decision of the Commonwealth Court to the Pennsylvania Supreme Court. On April 13, 2009,

allowance of appeal was denied.[2]  In the interim, on December 12, 2008, some six weeks after the Commonwealth Court decision, Plaintiff was released.  His release date was 328 days subsequent to his prior maximum as a Technical Parole Violator, but well within the sentence to be served if he were considered a Convicted Parole Violator.  Goodwine, 960 A.2d 186, n.3.

Plaintiff alleges claims against each of the individuals who participated in his parole revocation, as well as against DOC personnel, who are alleged to have acted with deliberate indifference in failing to independently challenge the determination of the Parole Board that he was a Convicted Parole Violator rather than a Technical Parole Violator.  Plaintiff alleges that each of the Defendants has violated his substantive and procedural due process rights and as well as his rights to equal protection under the Fourteenth Amendment to the United States Constitution.  He also alleges the violation of his Eighth Amendment rights to be free of cruel and unusual punishment, and his Fifth Amendment rights to due process and the right to be free of double jeopardy.  [ECF No. 56, pp. 8-9].

## II.    STANDARD OF REVIEW

Pursuant to Fed.R.Civ.P. 12(b)(6), in deciding a motion to dismiss, the Court must read the complaint in the light most favorable to the non-moving party and all well-pleaded, material allegations in the complaint must be taken as true. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397–98 (3d Cir. 2000).   Therefore, taking into consideration the allegations set forth in Plaintiff's Third Amended Complaint and the facts

---

[2] See, http://ujsportal.pacourts.us/DocketSheets/SupremeCourtReport.aspx?docketNumber=542 WAL 2008

as established by the exhibits thereto, the question is whether Plaintiff can prove any set of facts consistent with his or her allegations that will entitle him or her to relief. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

With particular reference to the allegations in Plaintiff's Third Amended Complaint as drafted by counsel, a court will accept well-pled allegations as true for the purposes of the motion; however, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly et.al., 550 U.S. 544, 555 (2007). In Twombly the Court made clear that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A "pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).

In 2009, the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In Iqbal, the Supreme Court made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [are] not suffic[ient]" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 1949. Only "a complaint that states a plausible claim for relief [will] survive[ ] a motion to dismiss." Id. at1950.

In light of the decision in <u>Iqbal</u>, the United States Court of Appeals for the Third Circuit set forth a two-part analysis to be applied by district courts when presented with a 12(b)(6) motion. First, the court must separate the legal elements and factual allegations of the claim, with the well-pleaded facts accepted as true but the legal conclusions disregarded. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210–211 (3d Cir. 2009). Second, the court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." <u>Id</u>. at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed to show—that the pleader is entitled to relief. <u>Id</u>.

## III. DISCUSSION

Goodwine alleges that his rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution were violated when he was incarcerated as a Convicted Parole Violator rather than as a Technical Parole Violator, resulting in the loss of the time he had been previously released on parole.

Section 1983 affords a right to relief where official action causes a "deprivation of rights protected by the Constitution,." <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 (1978). The statute is not an independent source of substantive rights, but merely "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." <u>Kopec v. Tate</u>, 361 F.3d 772, 775-76 (3d Cir. 2004); <u>see</u> <u>also</u> <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 284-85 (2002). To establish a claim under Section 1983, a plaintiff "must plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 235 (3d Cir. 2008). However, as in this case, where the allegations of the Complaint give rise to absolute immunity

or otherwise fail to allege facts sufficient to give rise to a cognizable claim, dismissal is appropriate.

   **A.    Defendants Cassidy, Keller, Martinez Fox and Imboden are Absolutely Immune from Suit.**

Officials who "perform functions integral to the judicial process" are absolutely immune from suit under Section 1983. Williams v. Consovoy, 453 F.3d 173 (3d Cir. 2006).

> While § 1983 makes no mention of an immunity defense, an official is immune from a § 1983 suit if she was "accorded immunity from tort actions at common law when the Civil Rights Act was enacted in 1871." Malley v. Briggs, 475 U.S. 335, 340, 106 S. Ct. 1092, 89 L. Ed.2d 271 (1986). Nevertheless, even if an official did not enjoy absolute immunity at common law, she may still be entitled to absolute immunity if she performs "special functions" that are analogous to those functions that would have been immune from tort actions at the time Congress enacted § 1983. Hughes v. Long, 242 F.3d 121, 125 (3d Cir. 2001) (citing Butz v. Economou, 438 U.S. 478, 506, 508, 98 S. Ct. 2894, 57 L.Ed.2d 895 (1978)). This immunity "was and is considered necessary 'to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.'" McArdle v. Tronetti, 961 F.2d 1083, 1084 (3d Cir. 1992) (Alito, J.), (quoting Butz, 438 U.S. at 512, 98 S. Ct. 2894). Accordingly, absolute immunity attaches to those who perform functions integral to the judicial process. Burns v. Reed, 500 U.S. 478, 484, 111 S. Ct. 1934, 114 L.Ed.2d 547 (1991).

Williams v. Consovoy, 453 F.3d 173, 178 (3d Cir. 2006). The scope of absolute immunity extends to those intimately involved in the judicial process, even when their actions are ultimately incorrect or violate a civil plaintiff's constitutional rights. See Imbler v. Pactman, 424 U.S. 409, 430 (1976); Broam v. Bogan, 320 F.3d 1023, 1029 (9th Cir.2003). Thus, the question for purposes of determining whether a defendant prosecutor or agent is entitled to absolute immunity is not whether the defendant was authorized to violate the plaintiff's rights, but whether the alleged violation occurred while the defendant was functioning as the state's advocate. See Esteves v. Brock, 106 F.3d 674, 677 (5th Cir.1997) ("Because [the prosecutor's] use of peremptory strikes in a racially discriminatory manner was part of her presentation of the

state's case, she is entitled to absolute immunity from personal liability"); and see, Brinson v. City of Philadelphia, CIV.A. 11-7479, 2012 WL 975073 (E.D. Pa. Mar. 21, 2012).

Because probation and parole officers also perform functions integral to the judicial process, they "are entitled to absolute immunity when they are engaged in adjudicatory duties. In their executive or administrative capacity, probation and parole officers are entitled only to a qualified, good faith immunity." Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir. 1989). To determine whether absolute immunity applies, "courts look to the nature of the functions being performed by the actor in question and evaluate the effect that exposure to liability would have on an appropriate exercise of that function." Williams v. Consovoy, 453 F.3d at 178.

The distinction between actions taken by parole officials in an executive and administrative capacity versus an adjudicatory capacity is not always clear. See Williams v. Consovoy, 333 F.Supp.2d 297, 300 (D.N.J.2004), aff'd 453 F.3d 173 (3d Cir. 2006) (citing Simon v. Ward, No. 99-1554, 2001 WL 41127, at * 2 (E.D.Pa.2001)). In Bieros v. Nicola, 839 F. Supp. 332, 335 (E.D. Pa. 1993), the court noted that the gathering of information in order to prepare a pre-sentence report was an administrative or executive duty as opposed to an action taken in an adjudicative capacity. However, the Simon court recognized that hearing evidence and making recommendations as to whether to parole a prisoner are adjudicatory acts. Simon, 2001 WL 41127, at *3. Moreover, in Breslin v. Brainard, No. 01-CA-7269, 2002 WL 31513425, at *7 n. 10 (E.D. Pa. 2002), the court observed that the United States Court of Appeals for the Third Circuit has held that parole officials are entitled to absolute immunity when they engage in certain adjudicatory acts, including: (1) hearing evidence; (2) making recommendations as to whether to parole a prisoner; or (3) making decisions whether to grant, revoke or deny parole. See Breslin, 2002 WL 31513425, at *7 n. 10 (citing Wilson, 878 F.2d at 776; Harper v. Jeffries,

808 F.2d 281, 284 (3d Cir.1986)). Adjudicatory acts also include presenting legal argument in the course of a hearing. See, e.g., Giuffre v. Bissell, 31 F.3d 1241, 1250 (3d Cir. 1994), quoting Kulwicki v. Dawson, 969 F.2d 1454, (3d Cir. 1992)"(absolute immunity attaches to all actions performed in a 'quasi-judicial' role," including "the presentation of evidence or legal argument, as well as selected out-of-court behavior 'intimately associated with the judicial phases' of litigation.").

In the instant case, Plaintiff alleges that at his parole hearing on June 28, 2007, Defendant Thomas Cassidy, a Parole Supervisor, "argued that Judge Manning exceeded his author[ity] in sitting as a magistrate and sentencing on a summary offense." [ECF No. 56, ¶ 31]. Plaintiff alleges that Defendant Cassidy did this knowingly, "submitting judicially estopped arguments," openly disregarding an Order of Court, and in violation of various statutes customs and policies in failing to treat Plaintiff as a technical parole violator. [ECF No. 56, ¶¶ 32-39]. Looking at Cassidy's "function" at the time of the alleged violation, Cassidy's misconduct lies in presenting legal argument concerning the jurisdiction of the court in sentencing Plaintiff. Cassidy's function was in the performance of his "quasi-judicial" role, representing the Commonwealth in the revocation of Plaintiff's parole. Accordingly, Cassidy is entitled to absolute immunity from suit. Williams v. Consovoy, 453 F.3d at 178.

Similarly, Plaintiff seeks to impose liability upon Defendant Stephan Keller, the Board hearing examiner, for the manner in which he conducted the revocation hearing; as well as PBPP members Benjamin Martinez, Charles Fox and Jeffrey Imboden, each of whom is alleged to have accepted Cassidy's arguments concerning Manning's authority and thereby violated Plaintiff's constitutional rights. It is apparent from Plaintiff's allegations that the role of Defendant Keller was in conducting the hearing and the role of Defendants Martinez and Fox and Imboden was

limited to deciding to revoke parole and adjusting his maximum sentence date based upon the legal conclusion that Plaintiff was a Convicted Parole Violator. Therefore, Defendants Keller, Martinez, Imboden and Fox acted solely in an adjudicatory capacity and are entitled to absolute immunity. See, Harper, 808 F.2d at 284 (serving as the hearing examiner and making a recommendation to the Parole Board is plainly adjudicatory); and, see, Wilson, 878 F.2d at 776; Breslin, 2002 WL 31513425, at *7 n. 10; Milberry v. Brown, No. 05-1158, 2007 WL 433164 at *3 (W.D. Pa. 2005).

### B. Defendants Thomas and Madden, Counsel for PBPP, and Daub, Secretary of the PBPP are Immune from Suit

Plaintiff alleges that Defendants Thomas and Madden, as counsel for the PBPP, acted unreasonably in denying his administrative appeals, "failing to follow well-settled law, policy, order of court and statutes" and in failing "to conduct an independent inquiry." [ECF No. 56, ¶¶ 79-82]. Similarly, Defendant Daub, as PBPP Board Secretary, is alleged to have acted unreasonably in failing "to independently review Plaintiff's filings and acknowledge well-settled law, order of court and policy," and in failing "to supervise Board members and attorneys."

First, to the extent that Plaintiff is alleging liability predicated upon Defendants' denial of his appeal of the initial determination of the PBPP, which is an adjudicatory function, Thomas, Madden and Daub are entitled to absolute quasi-judicial immunity. Harper v. Jeffries, 808 F.2d 281, 284 (3d Cir. 1986). Reading Plaintiff's Third Amended Complaint quite broadly, Plaintiff seeks to impose liability on Defendants for their allegedly erroneous analysis of a legal question, i.e., Judge Manning's jurisdictional authority to accept Plaintiff's guilty plea to a summary offense. While the conclusion reached may have been in error, such error was committed in the course of the adjudicatory function of deciding Plaintiff's appeals and, therefore, Defendants are entitled to absolute immunity. Wilson v. Daub, No. 12-0471, 2012 WL 686837 *2 (E.D. Pa.

March 2, 2012)("[a]s Wilson's claims against Daub are based on her issuance of a decision concerning his sentence – an adjudicatory duty – Daub is entitled to quasi-judicial immunity").

Second, it is well established that in order for Section 1983 liability to attach, a plaintiff must show that a defendant was personally involved in the deprivation of his or her federal rights.  See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).  The denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement.  See, e.g., Robinson v. Sobina, CIV.A.  09-247, 2011 WL 6056894 (W.D. Pa. Dec. 6, 2011); Jefferson v. Wolfe, No. 04–44, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006) (citing Watkins v. Horn, No. CIV.A. 96–4129, 1997 WL 566080, at *4 (E.D. Pa. Sept.5, 1997)); Pressley v. Beard, 255 F. App'x 216, 218 (3d Cir. 2008) (affirming the dismissal of supervisory officials who merely failed to take corrective actions when grievances or investigations were referred to them); Cf. Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996) (holding that a state's inmate grievance procedure did not give rise to a liberty interest protected by the Due Process Clause).

Plaintiff's Third Amended Complaint does not allege that his harm resulted from Defendant Thomas, Madden or Daub's contemporaneous misconduct which resulted in his classification as a Convicted Parole Violator, but instead appears to allege their liability for failing to override that determination.   Accordingly, the Third Amended Complaint fails to allege sufficient personal involvement upon which to predicate liability.  See, Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (personal involvement can only be shown where supervisor directed actions of supervisees, or actually knew of the actions and acquiesced in them); and see, Goodman v. McVey, 428 F. App'x 125, 127 (3d Cir. 2011)(dismissal of complaint against chairperson of PBPP proper where allegations of liability based upon

respondeat superior); <u>Keller v. Pennsylvania Bd. Of Probation and Parole</u>, No. 02-CV-1925, 2006 WL 839322 (March 29, 2006); <u>aff'd</u>, 240 Fed. App'x 477 (3d Cir. 2007)(allegations that Defendant acted as Secretary of the Parole Board, without personal involvement in any aspect of sentencing or parole hearings insufficient to establish liability).

### C. DOC Defendants Chamberlain, Scire and Schaup

Plaintiff has also filed suit against three SCI-Pittsburgh employees, Justin Schaup ("Schaup"), the records supervisor, Carol Scire ("Scire"), the grievance coordinator, and Dawn Chamberlain ("Chamberlain"), the warden. Plaintiff alleges that on October 22, 2007, he wrote to Schaup, asking to be freed because he had been unlawfully designated as a Convicted Parole Violator instead of a Technical Parole Violator. Subsequently, on November 5, 2007, Plaintiff received a written denial to his request. On April 29, 2008, Plaintiff submitted a written grievance to Scire, and while Plaintiff's Third Amended Complaint fails to allege the contents of the grievance, it is assumed that the grievance reiterated his allegation that he was unlawfully detained as a Convicted Parole Violator. Plaintiff alleges that his grievance was denied without independent review. Plaintiff further alleges that he appealed Scire's rejection of his grievance to Warden Chamberlain, who allegedly failed to act reasonably, follow appropriate laws, customs or policies and, as a result, Plaintiff remained incarcerated.

Plaintiff's Third Amended Complaint is sparse, and fails to allege any facts from which it could be inferred that any of the SCI-Pittsburgh Defendants had the authority to override the *legal conclusion* that Plaintiff was recommitted as a Convicted Parole Violator. Because this is not an instance where a mathematical miscalculation of time is alleged, Plaintiff has failed to allege sufficient facts to establish the personal involvement of any DOC official in determining the length of his incarceration. See, e.g., <u>Montanez v. Thompson</u>, 603 F.3d 243 (3d Cir. 2010).

In <u>Montanez</u>, the United States Court of Appeals for the Third Circuit reviewed the established legal rules for an Eighth Amendment claim for incarceration without penological justification:

> In the context of an Eighth Amendment claim for incarceration without penological justification, this Court has held that a plaintiff must demonstrate three elements to establish § 1983 liability against a prison official: (1) a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the unjustified detention. <u>Sample</u>, 885 F.2d at 1110. Relevant circumstances in assessing these factors are the scope of the official's duties and the role the official played in the life of the prison.

<u>Montanez v. Thompson</u>, 603 F.3d 243, 252 (3d Cir. 2010), as amended (May 25, 2010)

As alleged in his Third Amended Complaint, the causal connection between any DOC response and the Plaintiff's detention cannot be established. Plaintiff's sentence was calculated upon a legal determination by the PBPP that Plaintiff was a Convicted Parole Violator as opposed to a Technical Parole Violator. Plaintiff cannot and, indeed, has not alleged that any of the DOC Defendants were authorized to override that determination. See <u>Sample v. Diecks</u>, 885 F.2d 1099, 1111 (3d Cir. 1989)(records custodian had the authority and ability to correct error in sentence calculation). Here, no error in math within the authority of any Defendant is alleged. Because a defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in nor approved, Plaintiff's Third Amended Complaint fails to allege a plausible claim against any DOC defendant. <u>Flowers v. McVey</u>, No. 06-01735, 2007 WL 2743717 (M.D. Pa. 2007).

**D. Plaintiff's Fifth and Fourteenth Amendment Claims.**

Plaintiff has asserted broad undefined Fourteenth Amendment equal protection, procedural and substantive due process claims, as well Fifth Amendment due process and double jeopardy claims. Defendants contend throughout their Motion to Dismiss that the Plaintiff's vague and conclusory allegations are fatal to these claims. The Court is inclined to agree. For the reasons set forth below, in the absence of immunity, Plaintiff has failed to allege facts sufficient to support these claims.

**1. Fifth Amendment Claims**

Defendants correctly argue that Plaintiff cannot sustain a Fifth Amendment due process claim because "the Fifth Amendment's due process clause only protects against federal government action." See, e.g., Falbrook Irrigation Dist. v. Bradley, 164 U.S. 112, 158, 17 S.Ct. 56, 41 L.Ed. 369 (1896) ("The fifth amendment, which provides, among other things, that such property shall not be taken for public use without just compensation, applies only to the federal government, as has many times been decided"). Plaintiff has sued all state actors. As a result, Plaintiff's Fifth Amendment due process claim is dismissed for failing to state a claim upon which relief can be granted.

Plaintiff also asserts that Defendants have somehow violated his rights against double jeopardy, as protected by the Fifth Amendment. However, Plaintiff fails to allege any facts in support of this claim. It is clear that "[t]he revocation of a suspended sentence ... followed by the imposition of a prison sentence does not subject a [parolee] to double jeopardy." Cusatis v. Pennsylvania Bd. of Prob. & Parole, 1:12-CV-791, 2012 WL 3960317 (M.D. Pa. Aug. 8, 2012) report and recommendation adopted, 1:12-CV-0791, 2012 WL 3945480 (M.D. Pa. Sept. 10, 2012), citing, Pollard v. United States, 352 U.S. 354, 359–361 (1954); Dunn v. California Dept.

of Corrections, 401 F.2d 340, 342 (9th Cir. 1968); Thomas v. United States, 327 F.2d 795, 797

(10th Cir. 1964), cert. den. 377 U.S. 1000.; U.S. ex rel. Sole v. Rundle, 435 F.2d 721, 724 (3d

Cir. 1971).  Plaintiff has therefore failed to state a Fifth Amendment claim upon which relief

may be granted.

### 2.  Fourteenth Amendment Claims

With regard to Plaintiff's allegations that his due process rights have been violated,

Plaintiff must allege and prove:

> (1) that he was deprived of a protected liberty or property interest; (2) that this
> deprivation was without due process; (3) that the defendant subjected the plaintiff,
> or caused the plaintiff to be subjected to, this deprivation without due process; (4)
> that the defendant was acting under color of state law; and (5) that the plaintiff
> suffered injury as a result of the deprivation without due process.

Sample v. Diecks, 885 F.2d at 1113.  Plaintiff's incarceration beyond the term of his original

sentence clearly implicates a protected liberty interest; however, a pre-deprivation process was

available by which Plaintiff could successfully challenge his classification as a Convicted Parole

Violator.  First, Plaintiff was afforded an initial revocation hearing during which Plaintiff alleges,

"he waived his right to counsel" and "proceeded pro se."  ECF No. 56, ¶ 30.   As summarized by

the Commonwealth Court in its opinion,

> A parole revocation/violation hearing was held to determine whether Parolee
> would be recommitted as a convicted or technical parole violator.  At the hearing,
> Parolee argued that he could not be adjudicated a convicted parole violator
> because a common pleas judge sitting as a district justice accepted his guilty plea
> and, therefore, his plea was accepted in a non-record court.

Goodwine, 960 A.2d at 186-187.  Plaintiff participated in the hearing, and was afforded the

opportunity to present grounds upon which his recommitment should be amended to reflect his

status as a Technical Parole Violator.  While his argument was erroneously rejected, he was

provided a process by which to challenge Cassidy's arguments.   Second, upon his recommitment by the Hearing Examiner as a Convicted Parole Violator, Plaintiff filed a petition for administrative review, which was affirmed by the three-member Parole Board.  Plaintiff then filed an appeal to the Commonwealth Court pursuant to 42 Pa.Cons.Stat.Ann. § 763(a) (appeal of administrative decisions to Commonwealth Court).

In this case, Plaintiff was given an opportunity to be heard prior to the Hearing Examiner's initial decision.  He was provided the basis for his decision as well as an opportunity to file a statutorily authorized administrative appeal well before the expiration of his sentence as a Technical Parole Violator.  Finally, Plaintiff was granted access to a judicial remedy to challenge the PBPP's erroneous legal conclusion that Judge Manning did not have the jurisdictional authority to recast himself as a district magistrate judge so as to render Plaintiff a Technical Parole Violator.  Accordingly, Plaintiff has failed to allege facts giving rise to a Fourteenth Amendment procedural due process claim.

Plaintiff also alleges a general Fourteenth Amendment substantive due process claim as a result of his classification and as a Convicted Parole Violator.  However, this claim is not cognizable under the "explicit source rule." See Albright v. Oliver, 510 U.S. 266, 273 (1994) (holding that "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims") (citation omitted); County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998) ("if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process"); and Ordonez v. Yost, 289 F. App'x. 553, 555 (3d Cir.

2008) ("Appellant's substantive due process claim is identical to his Eighth Amendment claim; he must bring the claim pursuant to the more explicit constitutional amendment"). Accordingly, because Plaintiff's Fourteenth Amendment substantive due process is identical to his Eighth Amendment claim, he cannot also pursue a substantive due process claim, which is dismissed. Granberry v. Chairman of Pennsylvania Bd. of Prob. & Parole, CIV.A. 07-272, 2010 WL 486593 (W.D. Pa. Feb. 5, 2010), aff'd, 396 F. App'x 877 (3d Cir. 2010).

Plaintiff's Complaint further alleges a violation of his Fourteenth Amendment equal protection rights, but as with his initial and Second Amended Complaint, he fails to identify facts sufficient to establish the wrongdoing of each Defendant. As this Court indicated in its opinion disposing of Plaintiff's Amended Complaint, the "allegations fail to give the Defendants fair notice of which of their alleged acts constituted wrongdoing or what role they played, if any, in … [violating Plaintiff's equal protection rights]. The operative complaint simply fails to contain "enough factual matter (taken as true)" to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]" *Twombly,* 550 U.S. 555–56. Goodwine v. Keller, CIV.A. 09-1592, 2011 WL 1099256 (W.D. Pa. Mar. 22, 2011). Accordingly, to the extent absolute immunity or the Section 1983 requirement of direct personal involvement do not preclude Plaintiff's equal protection claim, Plaintiff's "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [are] not suffic[ient]" to defeat Defendants' Rule 12(b)(6) motion to dismiss. Ashcroft, at 1949.

## IV.    CONCLUSION

Although the Court is sympathetic to Plaintiff's misclassification and resulting continued incarceration, unfortunately he has not alleged a cause of action for which the law provides a private remedy. For the foregoing reasons, the Motion to Dismiss Third Amended Complaint

[ECF No. 57] is granted.  Additionally, because Plaintiff has been afforded two opportunities to amend his complaint to cure the above-stated deficiencies and through counsel, has failed to do so, it would be futile to allow him another opportunity to amend.  An appropriate order follows:

## ORDER

AND NOW, this 27th day of September, 2012, it is hereby ORDERED that Defendant's Motion to Dismiss Third Amended Complaint [ECF No. 57] is GRANTED with prejudice and the Clerk is directed to close the case.

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: September 27, 2012

cc:     Ronald Goodwine, Jr.
        530 Middle Avenue
        Wilmerding, PA 15148

        All counsel of record via CM/ECF